Alex R. Straus, SBN 321366
astraus@milberg.com
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**
280 S. Beverly Drive, Ste PH
Beverly Hills, CA 90212
Telephone: (917) 471-1894
Facsimile: (310) 496-3176

*Counsel for Plaintiff and Proposed Classes*
*(additional counsel on signature page)*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

MARIA LOPEZ, GREGORY
KILCREASE, VERONICA HOWARD
and REGINA ROGERS and on Behalf
of Themselves and Others Similarly
Situated,

      Plaintiffs,

      v.

ONVOY, LLC; INTELIQUENT, INC.;
IP HORIZON COMMUNICATIONS
LLC; HIGHER EDUCATION LOAN
AUTHORITY OF THE STATE OF
MISSOURI (MOHELA); SOCIAL
FINANCE, INC.; SOFI LENDING
CORP; DOE TELEMARKETING
COMPANIES 1-10 and JOHN DOES 1-
10,

      Defendants.

Case No.

Hon.

**CLASS ACTION COMPLAINT**

**<u>DEMAND FOR JURY TRIAL</u>**

1. **Telephone Consumer Protection Act,**
   **47 U.S.C. § 227** *et seq.*
2. **Florida Telephone Solicitation Act,**
   **Fl. St. § 501.059**
3. **Illinois Biometric Information**
   **Privacy Act, 740 ILCS 14/1,** *et seq.*
4. **Negligence**

Plaintiffs Maria Lopez, Gregory Kilcrease, Veronica Howard and Regina Rogers (hereinafter collectively referred to as "Plaintiffs"), individually and on behalf of all others similarly situated, allege on personal knowledge, investigation of their counsel, and on information and belief, bring this Class Action to stop Defendants from placing thousands of unauthorized telephone calls featuring pre-recorded messages with artificial voices containing highly deceptive and dangerous content that are made by VoIP Telecommunication Carriers to consumers who borrowed federal student loans, and to obtain redress for all persons injured by Defendants' illegal conduct.

## NATURE OF THE ACTION

1.      Defendants are actively engaged in a scheme to prey upon federal student loan borrowers by placing tens of thousands of robocalls[1] and transmitting direct voicemail messages featuring prerecorded artificial voice messages and delivering these robocalls to victims' cellular telephones with "spoofed" telephone numbers appearing on federal student loan borrowers-victim's caller identification[2] using Defendants' VoIP telephone services[3] and Voice API[4] technology[5] in violation of the Telephone Consumer Protection Act (TCPA) and the Florida Telephone Solicitation Act (FTSA). Defendants also gather biometric information from federal student loan borrowers during these calls by recording voiceprints in violation of the Illinois Biometric Information Privacy Act (BIPA). Upon information and belief, Higher Education Loan Authority of the State of Missouri ("MOHELA") as the servicing agent for SoFi Lending Corp. ("SoFi"), was

---

[1] "Robocall" means a call made through an automated process that places large volumes of telephone calls over the internet in order to deliver recorded messages, in contrast to calls placed one at a time by a live person.

[2] The practice of making a false number appear on the recipient's caller ID is known as "spoofing."

[3] VoIP stands for voice-over-internet protocol and phone calls to be placed calls over broadband internet connection.

[4] "Voice API" means technology to create artificial voices for customized call experience, recognize speech, and record calls (amongst other things). *See* https://telnyx.com/resources/voice-api-explained (last visited March 11, 2022).

[5] If the Court or members of the public wish to experience what a phone call from a basic Voice API sounds like, visit the following website: https://www.twilio.com/voice/api (last visited March 11, 2022).

negligent in allowing these fraudsters to access federal student loan borrower contact information and data and negligently enabled these fraudsters to target these consumers.

2.      The robocalls that deliver prerecorded messages with artificial voices and direct voicemail messages to federal student loan borrowers are highly deceptive and misleading because they make Defendants appear as if they are calling on behalf of the state and/or federal government to help borrowers obtain student loan forgiveness. But that is not the purpose of these robocalls.

3.      These robocalls are carefully crafted messages delivered to federal student loan borrowers' telephones over broadband internet using VoIP and API Voice technology purposely designed to trick borrowers with federal student loans into disclosing their personal, financial and biometric information (i.e., voiceprints) that can (and soon very likely will) be used for fraudulent purposes.

4.      The robocalls are particularly dangerous in the current student loan servicing market. Tens of thousands of federal student loan borrowers are eligible for the Public Service Loan Forgiveness (PSLF) Program or Temporary Expanded Public Service Loan Forgiveness (TEPSLF) Program based on their years of dedicated public service to government agencies and non-profit entities (e.g., Plaintiff Maria Lopez ("Ms. Lopez")), or are otherwise eligible for a discharge of their remaining loan balance if, for example, they attended a fraudulent trade school (e.g., Plaintiff Veronica Howard ("Ms. Howard")).

5.      Adding to this uncertain and constantly changing environment, news articles regularly inform the public that large numbers of federal student loan borrowers are now eligible for loan forgiveness, such as this recent CNN article from March 9, 2020: "**Public Service Loan Forgiveness: 100,000 borrowers are eligible so far under new rules**."[6]

6.      Multiple federal student loan payment pauses and news articles reminding borrowers that the federal government supports waiving $10,000 in student loan debt for

---

[6] https://www.cnn.com/2022/03/09/politics/student-loan-public-service-forgiveness-waiver/index.html (last visited March 10, 2021).

all student loan borrowers also create a chaotic and uncertain environment where federal student loan borrowers do not know if or when their loan balance, or a portion of their balance, will be forgiven.

7.      This unusual and uncertain environment for loan forgiveness eligibility puts federal student loan borrowers – eager to learn if and when their federal loans will be forgiven – at heightened risk of identity theft and fraud when Defendants cause these illegal robocalls with artificial prerecorded messages promising loan forgiveness to be delivered to borrowers' telephones.

8.      These robocalls are also extremely dangerous because, upon information and belief, federal student loan borrowers' voiceprints are collected and stored by fraudsters during these calls using Defendants' API Technology. Stolen voiceprints from federal student loan borrowers can easily be used to hack into these borrowers' financial accounts where the financial institution holding the account uses voiceprint technology to verify customers' identities. Most major financial institutions in the United States use voiceprint identification technology as a security measure meant to protect their customers.

9.      Voiceprint verification technology has now, perversely, become an information security vulnerability for these financial institutions as a result of the conduct described throughout this Complaint.

10.     Plaintiffs bring this action on behalf of themselves and all federal student loan borrowers nationwide who received these robocalls and direct voicemails with prerecorded deceptive and misleading messages featuring artificial voices made to their telephones with "spoofed" telephone numbers appearing on borrowers' caller identification to: (i) immediately stop these illegal robocalls that violate federal and state law, (ii) force defendants to immediately purge all voiceprint data or other biometric information stored in their systems and enjoin Defendants from collecting such information from any person in the future; (iii) reveal the identities of the telemarketers and call centers that participated in this fraudulent scheme and to hold their directors,

officers, principals and owners personally liable for their extremely dangerous and illegal conduct; (iv) protect their fellow federal student loan borrowers from being victimized by these unscrupulous fraudsters preying upon a vulnerable population of consumers at the time when they are most vulnerable; and (iv) hold the SoFi Defendants and their agent, MOHELA, responsible for negligence in allowing Defendant Onvoy, LLC ("Onvoy"), Defendant Inteliquent, Inc. ("Inteliquent") and Defendant IP Horizon Communications LLC ("IP Horizon") access to federal student loan borrowers' cellular telephone numbers so that Onvoy, Inteliquent and IP Horizon could deliver these robocalls to federal student loan borrowers' cellular telephones (which were initially designed to direct student loan borrowers with private SoFi student loans serviced by MOHELA to the Pathways Student Loan Program, a program meant solely to refinance private SoFi student loans that are in default or otherwise delinquent).

## JURISDICTION AND VENUE

11.    This Court has federal question jurisdiction pursuant to 28 U.S.C § 1331 and 47 U.S.C. § 227 *et seq.*

12.    This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C §§ 1332 and 1367 because this is a class action in which the matter or controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and in which some Members of the proposed nationwide class are citizens of a state different from Defendants.

13.    This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28. U.S.C. § 1367

14.    This Court has personal jurisdiction over Defendants because they transact business in the United States, including in this District, have substantial aggregate contacts within the United States, including in this District, engaged in conduct that has a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons throughout the United States, and purposely availed themselves of the laws of the

United States and the State of California. Defendants have placed thousands of illegal robocalls to California citizens.

15.     Venue is proper in this District because this District is where a substantial portion of the conduct giving rise to Plaintiffs' claims occurred, where Defendants transact business, and where Defendant Social Finance, Inc. is headquartered (San Francisco), and the remaining Defendants are deemed to reside in any judicial district in which they are subject to personal jurisdiction at the time the action is commenced.

## INTRADISTRICT ASSIGNMENT

16.     Pursuant to N.D. Cal. Civ. L.R. 3-2(c), (d), and 3-5(b), this Action is properly assigned to the San Francisco or the Oakland division because a substantial part of the events and omissions which give rise to the claim emanated from California, one of the Defendants' principal places of business is located in San Francisco, and members of the putative Class are located in San Francisco.

## PARTIES

17.     Plaintiff Maria Lopez is, and at all times mentioned herein was, an individual citizen of Illinois. Ms. Lopez financed her education at University of Illinois at Urbana Champagne using federal loans. Her federal student loans are serviced by Defendant MOHELA. Ms. Lopez is on an Income-Based Repayment Plan. She works as an Administrator for the Decatur Public School District. As a public servant with at least 10 years of public service, Ms. Lopez is eligible for loan forgiveness under the PSLF and/or TEPSLF.

18.     Plaintiff Gregory Kilcrease and at all times mentioned herein was, an individual citizen of Florida. Mr. Kilcrease financed his education at Florida State College at Jacksonville using federal loans. His federal student loan(s) are serviced by Defendant MOHELA. Mr. Kilcrease is on an Income-Based Repayment Plan.

19.     Plaintiff Veronica Howard is, and at all times mentioned herein was, an individual citizen of Michigan. Ms. Howard financed her education at a medical training

trade school using federal loans. Her federal student loan(s) are serviced by Defendant MOHELA. Ms. Howard is on an Income-Based Repayment Plan.

20.    Plaintiff Regina Rogers is, and at all times mentioned herein was, an individual citizen of Texas. Ms. Rogers financed her education in business administration using federal loans. Her federal loan(s) are serviced by Defendant MOHELA. Ms. Rogers is on an Income-Based Repayment Plan.

21.    Defendant Inteliquent, Inc.[7] is a VoIP and "API Provider" with its headquarters at 550 West Adams Street, Suite 900, Chicago, IL 60661. Inteliquent merged with Onvoy, LLC under the name Inteliquent (the entity providing some of the phone numbers used to make the illegal robocalls described throughout this Complaint). An "API Provider" programs a robocall with an artificial voice that is delivered through VoIP technology to consumers' telephones and records the content of the call. Inteliquent advertises on its website that "You can depend on us," that it has 115,000,000 phone numbers powered by its network with 300,000,000,000 minutes of use on its network annually, and that it has 37% more local number coverage than other providers.[8] Intiliquent provides telecommunications services in the following states: Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode

---

[7] Inteliquent, Inc. uses the following trade names according to its most FCC Form 499 that include without limitation: Neutral Tandem, Inc., Neutral Tandem – AR, LLC, Neutral Tandem –AZ, LLC, Neutral Tandem –CA, LLC, Neutral Tandem –IN, LLC, Neutral Tandem –IA, LLC, Neutral Tandem –KS, LLC, Neutral Tandem –KY, LLC, Neutral Tandem –LA, LLC, Neutral Tandem –ME, LLC, Neutral Tandem –FL, LLC, Neutral Tandem –GA, LLC, Neutral Tandem –ID, LLC, Neutral Tandem –IL, LLC, Neutral Tandem –MD, LLC, Neutral Tandem –MA, LLC, Neutral Tandem –-MI, LLC, Neutral Tandem –MI, LLC, Neutral Tandem –MN, LLC, Neutral Tandem –MS, LLC, and Neutral Tandem –-MO, LLC

[8] https://www.inteliquent.com/about-us (last visited March 4, 2022).

CLASS ACTION COMPLAINT

Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, Wyoming.

22.    Defendant Onvoy, LLC also provides telephone numbers and Caller ID spoofing services and delivers these robocalls with prerecorded message created using API Voice Technology to federal student loan borrowers. Onvoy is also the holding company for Inteliquent according to it's most recent FCC Form 499. Defendant Onvoy's headquarters is located at 550 West Adams Street, Suite 1130, Chicago, IL 60661. Upon information and belief, 60% of all spam telephone calls in the United States are delivered to consumers' phones using Onvoy's network. Upon information and belief and investigation by counsel, approximately 60% of all robocalls placed in the United States are delivered by the Onvoy network to US consumers' telephones.

23.    Defendant IP Horizon Communications, LLC is a VoIP provider with its headquarters at 7700 Congress Ave, Suite 3214, Boca Raton, Florida, 33487. IP Horizon provides telephone numbers used to make thousands robocalls with spoofed numbers on borrowers' Caller IDs and delivers these calls to borrowers' cellular telephones over broadband internet using its VoIP network. Not only does Defendant IP Horizon deliver fraudulent robocalls by the thousands into the U.S. telephone system daily, including the robocalls it delivers to federal student loan borrowers described throughout this Complaint, but also provides the return-calling services to the Telemarketing Defendants-fraudsters so their potential victims (Plaintiffs and Class Members) can call them back upon listening to a direct voicemail with a prerecorded message with an artificial voice.

24.    Defendant Inteliquest, Onvoy and IP Horizon are collectively referred to throughout this complaint as the "Telecommunications Defendants."

25.    Defendant Higher Education Loan Authority of the State of Missouri (MOHELA) is a corporation conducting and engaging in business in the State of California and maintains its headquarters in Chesterfield, Missouri. Defendant MOHELA is the agent for SoFi in servicing SoFi private student loan products as well as a loan

servicer for the United States Department of Education for federal student loan borrowers. Recently, Defendant MOHELA was chosen by the Department of Education to administer the Public Service Loan Forgiveness (PSLF) Program and the Temporary Expanded Public Service Loan Forgiveness (TEPSLF) Program because the current federal contractor, FedLoans, did not renew its contract with the Department of Education to continue administering these programs. All federal student loan borrowers that are eligible and applied for the PSLF and/or TEPSLF whose accounts are currently serviced by FedLoans will have servicing of their transferred to MOHELA in the near future.

26.    Defendant Social Finance, Inc., also doing business as SoFi, is a Delaware Corporation with its principal office or place of business at 234 First Street, San Francisco, CA 94105.

27.    Defendant SoFi Lending Corp., also doing business as SoFi, is a California corporation with its principal office or place of business at 234 First Street, San Francisco CA 94105. SoFi Lending Corp. is a wholly owned subsidiary of Defendant Social Finance, Inc.

28.    Defendant Social Finance, Inc. and SoFi Lending Corp. (referred collectively throughout this Complaint as "SoFi" are "FinTech" companies in the business of marketing, offering, extending and servicing private student loans, among a large array of other financial products and services to consumers in California and across the United States.

29.    Doe Telemarketing Companies 1-100 are unidentified lead generators and call centers doing business as the Division of Economic Impact, the Department of Economic Impact, and the Central Processing Center for Student Loan Forgiveness.

30.    John Doe Defendants 1-100 are the principals, owners, officers and directors of Doe Telemarketing Companies 1-100. Plaintiff brings this action against them individually for personal liability.

31.     Doe Telemarketing Companies 1-100 and John Doe Defendants 1-100 are collectively referred throughout this complaint as the "Telemarketing Defendants."

## FACTUAL ALLEGATIONS

32.     The Telecommunication Defendants, as the agents or sub-agent of SoFi and SoFi's agent MOHELA, place telephonic sales calls to federal student loan borrowers whose loans are serviced by MOHELA, using an automated system for the dialing of telephone numbers that deliver fraudulent prerecorded messages featuring artificial voices to consumers when they answer the call and capture biometric information from these federal student loan borrowers (i.e., voiceprints); or deliver the fraudulent prerecorded message with artificial voices directly to consumer' voicemails and provide a number where the consumer can return the illegal robocall that routes the consumer to the Telemarketing Defendants' call center where agents attempt to keep the consumer talking on the phone to gather biometric identifiers (i.e., recording their voice) and attempt to gather their personal and confidential information to be used for fraudulent purposes.

## I.     The Pre-Recorded Artificial Voice Calls and Direct Voicemails

33.     Federal student loan borrowers serviced by MOHELA that answer these deceptive robocalls hear the following two prerecorded messages from fake computer-generated voices that identify themselves as "Mary Fuller, David Miller, David Fuller, Elizabeth Adler and Margaret Smith."

**Prerecorded Voice Robocall 1:**

Hello, my name is [Mary Fuller] with the Division of Economic Impact with an important statewide update. We are required by the state to inform those on our list that have student loan debt that you now have access to the Economic Impact Student Debt Relief Program being offered to you during this special enrollment period. The Biden Administration has eliminated over 58 billion dollars in student debt and has now extended the enrollment period. This is a

great opportunity for you to significantly reduce or, in most cases, eliminate your student loan debt altogether! However, the window for the special enrollment period can close at any time. So please call our consumer direct line at 970-707-5751. This message has been marked complete on behalf of the Division of Economic Impact. Please call now.

34.     Federal student loan borrowers also receive an avalanche of the following prerecorded artificial intelligence "bot" messages delivered directly to their voicemails.

**"AI Bot" Prerecorded Direct Voicemail Message:**

I am the virtual assistant for Margaret Smith with the Central Processing Center for federal student loans. The purpose of her call was to make you aware that the new presidential Joe Biden Administration supports forgiving $10,000 in student loan debt per borrower, as well as excuses borrowers for making their payments in February, if not longer. Using our automated technology, you are now able to obtain enrollment information based on your current situation. To use our AI automation and find the program you are approved for, you will need to write down the website. I will also deliver a text message that will provide a link with the program benefits. Would you like to hear the website and receive a text message?

35.     If a federal student loan borrower responds with the word "Yes" at the end of the above artificial bot prerecorded message or calls the number 970-707-5751, one of two things occur:

**II.     The Pathways Student Loan Program**

36.     Several months ago, these robocalls directed federal student loan borrowers to the Pathways Student Loan Program at https://pathwaystudentloans.com. This "program" is administered by Defendant MOHELA and, upon information and belief and

investigation by counsel, is a private student loan refinancing product meant solely for borrowers with private student loans made by SoFi that are currently in default or are otherwise behind on their scheduled payments. It is not designed to be marketed or used by federal student loan borrowers.

37.     Attached as Exhibit A are copies of the Pathways Student Loan program web pages captured from the website on or about December 15, 2021. After capturing these images from the website, Defendant MOHELA changed the content of the website to add the following notice with the title "Important Information":



38.     This notice about "Important Information" was only recently added to the website. *See* Exhibit A.

39.     Current rates for SoFi private student loans are also listed on the Pathways Student Loan website:

40.     When federal student loan borrowers go to the Pathways Student Loan login portal, they see the following login screen that represents the federal student loan borrower is logging into a system connected to, controlled and monitored by the federal

government. This is the same notice that federal student loan borrowers receive when logging into their MOHELA account, as depicted below:



41.     Not only is MOHELA the agent for SoFi in servicing its portfolio of private student loans, MOHELA is also the loan servicer for Direct Loans made by the United States Department of Education, as depicted by the following login pages:

**MOHELA federal student loan borrower login page:**



**MOHELA - SoFi private student loan borrower login page:**

## III.    Fraudulent collection of federal student loan borrower data and biometric information

42.    More recently, if a borrower either says "Yes" to the artificial assistant to "Margaret Smith" or calls the number given by artificial voice purporting to be Mary Fuller, David Miller, Robert Fuller or Elizabeth Adler, the Telecommunication Defendants connect the borrower the Telemarketing Defendants' call center(s) where the agents falsely claim they work for as the "Central Processing Center for Student Loan

13

Forgiveness Applications" and attempt to gather confidential, personal and biometric information from federal student loan borrowers for fraudulent purposes.

43.     These robocalls with prerecorded artificial voices and direct voicemail messages are, upon information and belief, made by the Telecommunication Defendants using an automated system for the selection or dialing of telephone numbers and the playing of prerecorded messages to federal student loan borrowers' cellular telephones.

44.     In placing these robocalls to federal student loan borrowers' cellular telephones, the SoFi Defendants, MOHELA, and the Telemarketing Defendants and their principals and employees falsely claiming to be the "Central Processing Center for Federal Student Loans" and the "Division of Economic Impact," these Defendants violated the TCPA by contacting Plaintiffs and Class Members on their cellular telephones for non-emergency purposes using "an artificial or prerecorded voice" as described in 47 U.S.C. § 227(b)(1)(A), without their prior express written consent within the meaning of the TCPA.

45.     Defendants Onvoy, Inteliquent and IP Horizon create the artificial voices featured on the telephone solicitations and intentionally deliver these illegal robocalls calls to Plaintiffs' and Class members' (potential victim's) phones.

46.     Upon information and belief and investigation by counsel for Plaintiffs, the Telecommunication Defendants "spoofed" the telephone numbers appearing on Plaintiffs' and Class Members' caller identification when the robocall is delivered to consumers' telephones by the Telecommunication Defendants. These spoofed numbers include, for example, 707-400-1797, 469-591-0111, 845-847-1797, 934-204-3579, 239-488-3442, 239-488-3442 and many others.

47.     Not only do Defendants IP Horizon, Intliquent and Onvoy deliver vast numbers of these fraudulent robocalls every day to federal student loan borrowers throughout the country whose loans are serviced by MOHELA, Defendant IP Horizon facilitates Defendants' fraudulent scheme by providing return-calling services to the

Telemarketing Defendants acting on behalf of the MOHELA, as the agent of SoFi. As stated above, the robocall messages provide a domestic call-back number, which is 970-707-5751.

48.    A visit to IP Horizon's website,[9] which is merely two pages, makes it obvious that IP Horizon knowingly routes an enormous volume of fraudulent telemarketing calls to consumers throughout the US:



49.    When federal student loan borrowers call the number provided by the Telecommunication Defendants artificial prerecorded message, the IP Horizon delivers the borrower's return call to the Telemarketing Defendants. Upon delivery of the return call from the deceived federal student loan borrower, an agent at the Telemarketing Defendants' call center(s) answers and identifies the call center as the "Student Finance Center" or "The Central Processing Center for Student Loan Forgiveness Applications," and attempts to collect sensitive personal and financial information from federal student

---

[9] https://iphorizon.com/ (last visited March 3, 2022). It should be noted that the only other page on the IP Horizon website is a "confidential" technical manual describing how they perform their "services."

loan borrowers. The agents at the Telemarketing Defendants' call center(s) refuse to identify who they are and the company that owns the call center and employed them.

50.     During these calls, the Telecommunication Defendants are, upon information and belief, collecting voiceprint identifiers from the federal student loan borrower. The artificial intelligence bot and the agents at the call center where consumers are transferred or call in response to these prerecorded messages are not only trying to collect federal student loan borrowers' confidential and personal information, they are also trying to get the caller to continue to talk so their information system can record and capture enough of their voice to create a voiceprint that can be used by the Telecommunication Defendants' Voice API technology to program a computer to mimic the federal student loan borrowers' voice.

51.     Voiceprints and confidential personal and financial information can be used to unlawfully access consumer bank accounts at large financial institutions and other companies that use voiceprint technology to authenticate a caller's identification (i.e., to make sure the person calling the financial institution is actually the account holder and not a fraudster trying to steal their customers' money). Such institutions include without limitation TD Bank, Chase, as well as most major financial institutions.

52.     For example, the prerecorded messages illegally delivered to federal student loan borrowers' telephones and voicemails from "Mary Fuller", "David Miller", Rober Fuller" "Elizabeth Adler" and the "artificial intelligence bot" are actually artificial voices created using the Telecommunication Defendants' Voice API technology that are caused to be delivered to borrowers' telephones by these Defendants' VoIP network. They are not real people that created these prerecorded messages. For example, the artificial voices falsely representing that they are "David Miller" and "Robert Fuller" sound *identical* and cannot be the same person (or any real person).

53.     Similar, albeit more advanced technology has been used to create a fake video and voice of President Obama that was played on a late-night talk show to warn the public of the dangers of this technology. *See*

https://www.youtube.com/watch?v=AmUC4m6w1wo (last visited March 10, 2022).

**IV.     The Telephone Consumer Protection Act of 1991 (TCPA), 47 U.S.C. § 227**

54.     In 1991, Congress enacted the TCPA[10] in response to a growing number of consumer complaints regarding certain telemarketing practices.

55.     The TCPA regulates, among other things, the use of telephone equipment to deliver prerecorded messages to any cellular telephone services.

56.     Specifically, the plain language of sections 227(b)(1)(A)(ii) and 227(b)(2) prohibit the making any call to any telephone number assigned to a cellular telephone service or any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express written consent of the called party unless the call is made solely to collect debt owed to or guaranteed by the United States, or is initiated for emergency purposes.

57.     According to the findings of the FCC, the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

58.     The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.[11]

59.     The FCC has defined prior express written consent in 47 C.F.R. § 64.1200(f)(8) as "an agreement, in writing, bearing the signature of the person called that

---

[10] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. § 227 (TCPA). The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. § 201 *et seq.*
[11] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, report and Order, 18 FCC Rcd 14014 (2003).

clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."

60.    Under the TCPA, the burden is on the Defendants to demonstrate prior express written consent.

61.    The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations. *See* FCC Declaratory Ruling, Memorandum and Order, 10 FCC Rcd. 12391, 12397 (¶ 13) (1995).

62.    On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of … section 227(b) … that are committed by third-party telemarketers."[12]

63.    More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer has apparent (if not actual) authority" to make the calls. 28 F.C.C.R. at 6586 (¶ 34).

64.    The FCC has rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of a formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at n. 107.

65.    The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

---

[12] In the Matter of The Joint Petition Filed by DISH Network, LLC, the United States of America, and the States of California, Illinois, North Carolina and Ohio for Declaratory Ruling concerning the Telephone Consumer Protection Act (TCPA) Rules, et al., CG Docket No. 11-50, 28 F.C.C.R. 6574, 6574 (¶ 1) (May 9, 2013) ("May 2013 FCC Ruling").

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

{A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to the information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability of the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mar may also be relevant. It may also be persuasive that the seller approved, wrote, or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for unauthorized conduct of a third-party telemarketer that is authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

28 F.C.C.R. at 6592 (¶ 46).

66.    SoFi is legally responsible for ensuring that its agents, in this case MOHELA and the Telecommunication Defendants, complied with the TCPA, even if the Telecommunication Defendants made the calls, and SoFi or its agent (MOHELA) did not make the calls themselves.

67.    Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information. *Id.* at 6592-93 (¶ 46). Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## V.     The Florida Telephone Solicitation Act (FTSA), Fl. St. § 501.059

68.     The Florida Telephone Solicitation Act (FTSA), as recently amended and effective as of July 1, 2021, is broader than the TCPA with respect to both the conduct prohibited by the FTSA and the parties that are liable for violations of the FTSA.

69.     The plain language of the FTSA makes it a violation to "make or *knowingly allow a telephone sales call to be made* if such call involves an automated system for the selection or dialing of telephone numbers or the playing or a recorded message when a connection is completed to the number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a). (emphasis added)

70.     The FTSA also makes it "unlawful for any person who makes a telephonic sales call or *causes a telephonic sales call to be made* to fail to transmit or cause not to be transmitted the originating telephone number and, when made available by the telephone solicitor's carrier, the name of the telephone solicitor to any caller identification service in use by a recipient of a telephonic sales call." Fla. Stat. § 501.059(8)(b). (emphasis added)

71.     The FTSA also mandates that "[i]f a telephone number is made available through a caller identification service as a result of a telephonic sales call, the solicitor must ensure that telephone number is capable of receiving telephone calls and must connect the original call recipient, upon calling such number, to the telephone solicitor or to the seller on behalf of which a telephone sales call was placed." Fla. Stat. § 501.059(8)(b).

72.     The FTSA also makes it "unlawful for any person who makes a telephonic sales call or causes a telephonic sales call to be made to *intentionally alter the voice of the calle*r in an attempt *to defraud, confuse, or financially or otherwise injure* the recipient of a telephonic sales call or in order *to obtain personal information* from the recipient of a telephonic sales call which may be used in a fraudulent and unlawful manner." Fla. Stat. § 501.059(8)(c). (emphasis added)

73.     Finally, the FTSA provides a "rebuttable presumption that a telephonic sales call made to any area code in this state is made to a Florida resident or to a person in this state at the time of the call." Fla. Stat. § 501.059(8)(d).

74.     The Telecommunication Defendants used an automated system to select and dial federal student loan borrowers' residential and cellular telephones and to play a prerecorded message without the prior express written consent of the borrowers receiving these calls.

75.     The Telecommunication Defendants, and each of them, made or caused these telephonic sales calls to be made while failing to make available to the called party's Caller ID service the telephone number from where they originated these calls. When a call recipient calls back the number appearing on their Caller ID, they reach a non-working number or a phone lin. The Telecommunication Defendants knowingly and intentionally "spoofed" the Caller ID services of the called parties in order to conceal the identity of the Telecommunication Defendants.

76.     The Telecommunication Defendants, specifically Inteliquent, also intentionally altered the person who made the telephonic sales call by using prerecorded messages comprised of other people's voices and then having those voices identify themselves by a false name (e.g., David Miller and David Fuller) and did so in an attempt to confuse the recipient of the call into thinking they were receiving a call about their eligibility to have their federal student loans forgiven and to obtain their personal and confidential manner that may be used in a fraudulent or unlawful manner.

77.     MOHELA, as the agent of SoFi, as well as SoFi knowingly allowed these telephonic sales calls to be made by the Telecommunication Defendants in promoting the Pathways Student Loan Program.

78.     These calls were placed throughout the United States to federal student loan borrowers, including borrowers residing in Florida and/or with Florida area codes, such

as Mr. Kilcrease whose 904-area code is assigned to most numbers in the northeast region of Florida.

## VI.    The Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.*

79.    The Illinois Legislature enacted the Biometric Information Privacy Act (BIPA) to regulate the use biometric information because "[t]he use of biometrics is growing in the business and security screening sectors and appears to promise streamlined financial transactions and security screenings." 740 ILCS 14/5(a)

80.    The legislature recognized that "[b]iometrics are unlike other unique identifiers that are used to access finances or other sensitive information. For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." 740 ILCS 14/5(c).

81.    The legislature also recognized that "[a]n overwhelming majority of members of the public are weary of the use of biometrics when such information is tied to finances and other personal information" 740 ILCS 14/5(d). The legislature also recognized that "many members of the public are deterred from partaking in biometric identifier-facilitated transactions," that "*[t]he full ramifications of biometric technology are not fully known*, and that [t]he public welfare, security, and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information. 740 ILCS 14/5(d)-(g). (emphasis added).

82.    BIPA defines "biometric identifier" to include, amongst other things, an iris scan, fingerprint and, of particular importance, a *voiceprint*. (emphasis added). BIPA defines "biometric information" to mean "any information, regardless of how it is captured, converted, storied, or shared, based on an individual's biometric identifier used to identify an individual. Finally, BIPA defines "confidential and sensitive information" to include, amongst other things, "a unique identifier number to locate an account or

property, an account number, a PIN number, a pass code, a driver's license number, or a social security number." 740 ILCS 14/10.

83.    BIPA prohibits private entities from collecting, capturing, purchasing, receiving through trade, or otherwise obtaining a person's or a customer's biometric information except under limited circumstances. 740 ILCS 14/15(b). BIPA also prohibits private entities in possession of a biometric identifier or biometric information from selling, leasing, trading or otherwise profiting from a person's or customer's biometric identifier or biometric information. 740 ILCS 14/15(c). The statute also bars private entities in possession of biometric information or a biometric identifier from disclosing, redisclosing, or otherwise disseminating a person's or customer's biometric identifier or biometric information except under very limited circumstances. 740 ILCS 14/15(d).

## VII.    Plaintiffs' Factual Allegations

### a.    <u>Plaintiff Maria Lopez</u>

84.    Plaintiff Maria Lopez is a citizen of the State of Illinois and at all times herein has been the exclusive and customer user of the telephone number 217-XXX-2168, which was assigned to a cellular telephone service.

85.    Ms. Lopez is a federal student loan borrower. Her federal loan(s) are serviced by Defendant MOHELA.

86.    Ms. Lopez is a public servant employed by the Decatur Public School System in Illinois.

87.    Ms. Lopez is on an IBR Plan to repay her federal student loan(s).

88.    Ms. Lopez, as a public servant, is eligible for loan forgiveness under the PSLF and/or TEPSLF.

89.    Ms. Lopez has received multiple robocalls with the automated message referenced in Paragraphs 33 and 34 of this Complaint delivered to her cellular telephone promising loan forgiveness within the last year.

90.     Ms. Lopez spoke during these calls when she answered it but hung up shortly thereafter because she (correctly) thought it was a scam.

91.     Ms. Lopez also received direct voicemail messages with prerecorded messages from artificial voices that were the same messages she received when answering her cellular telephone that are referenced in Paragraph 33 and 34 of this Complaint. These calls and messages were delivered to her telephone by the Telecommunication Defendants.

92.     Upon information and belief and investigation by counsel, the number that appeared on Ms. Lopez's caller identification was "spoofed" by the Telecommunication Defendants and was not a working telephone number or the same telephone number from where the robocall originated.

93.     Ms. Lopez never consented to receiving these prerecorded messages to her cellular telephone.

**b. <u>Plaintiff Gregory Kilcrease</u>**

94.     Plaintiff Gregory Kilcrease is a citizen of the State of Florida and at all times herein has been the exclusive and customer user of telephone number 904-XXX-8342, which was assigned to a cellular telephone service.

95.     Mr. Kilcrease is a federal student loan borrower. His federal loan(s) are serviced by Defendant MOHELA.

96.     Mr. Kilcrease is on an IBR Plan to repay his federal student loan(s).

97.     Mr. Kilcrease has received multiple robocalls with the automated message referenced in Paragraph 33 of this Complaint delivered to his cellular telephone promising loan forgiveness within the last year.

98.     The last time Mr. Kilcrease received a prerecorded message using an artificial voice delivered to his cellular telephone by the Telecommunication Defendants was on or about December 10, 2021.

CLASS ACTION COMPLAINT

99.   Mr. Kilcrease spoke during these calls when he answered it but hung up shortly thereafter.

100.   Upon information and belief and investigation by counsel, the number that appeared on Mr. Kilcrease's caller identification was "spoofed" by the Telecommunication Defendants and was not a working telephone number or the same telephone number from where the call originated.

101.   Mr. Kilcrease never consented to receiving these prerecorded messages to his cellular telephone.

### c.  **Plaintiff Regina Rogers**

102.   Plaintiff Regina Rogers is a resident of the State of Texas and at all times herein has been the exclusive and customer user of telephone number 903-XXX-0321.

103.   Ms. Rogers is a federal student loan borrower. Her federal loan(s) are serviced by Defendant MOHELA.

104.   Ms. Rogers is a public servant employed by the Texas Department of Health and Human Services.

105.   Ms. Rogers is on an IBR Plan to repay her federal student loan(s).

106.   Ms. Rogers, as a public servant, is eligible for loan forgiveness under the PSLF and TEPSFL.

107.   Ms. Rogers has received multiple robocalls with the automated message referenced in Paragraphs 33 and 34 of this Complaint delivered to her cellular telephone promising loan forgiveness.

108.   Ms. Rogers began receiving these prerecorded messages using an artificial voice beginning in or around January 2022 when servicing of her student loan(s) was transferred from FedLoans to MOHELA.

109.   Ms. Rogers spoke when answering these calls but hung up shortly thereafter.

110.   Upon information and belief and investigation by counsel, the number that appeared on Ms. Rogers' caller identification was "spoofed" by the Telecommunication

Defendants and was not a working telephone number or the same telephone number from where the call originated.

111.    Ms. Rogers never consented to receiving these prerecorded messages to her cellular telephone.

### d. **Plaintiff Veronica Howard**

112.    Plaintiff Veronica Howard is a resident of the State of Michigan and at all times herein has been the exclusive and customer user of telephone number 313-XXX-2577.

113.    Ms. Howard is a federal student loan borrower. Her federal loan(s) are serviced by Defendant MOHELA.

114.    Ms. Howard is on an IBR Plan to repay her federal student loan(s).

115.    Ms. Howard financed her education at the National Education Center (a trade school that purportedly taught consumers skills to use in the medical industry and falsely advertised job placement rates), which was eventually purchased by Corinthian College, a notorious trade school investigated by the federal government and found to have engaged in widespread fraud and misrepresentations to its students[13] and prospective students such that Ms. Howard may be eligible for a discharge of her federal loans.

116.    Ms. Howard has received multiple robocalls with the automated prerecorded message with an artificial voice referenced in Paragraph 33 of this Complaint delivered to her cellular telephone promising loan forgiveness.

117.    Ms. Howard has been receiving these prerecorded messages using an artificial voice for several months that sounds like a female voice.

118.    Ms. Howard spoke when answering these calls but hung up shortly thereafter.

---

[13] *See* https://www.washingtonpost.com/news/grade-point/wp/2016/09/29/feds-found-widespread-fraud-at-corinthian-colleges-why-are-students-still-paying-the-price/ (last visited March 8, 2022).

CLASS ACTION COMPLAINT

119.    Upon information and belief and investigation by counsel, the number that appeared on Ms. Howard's caller identification was "spoofed" by the Telecommunication Defendants and was not a working telephone number or the same telephone number from where the call originated.

120.    Ms. Howard never consented to receiving these prerecorded messages to her cellular telephone.

## VIII.  Agency/Joint Venture

121.    Plaintiff is informed and believes, and on that basis alleges, that at all times herein mentioned Defendant MOHELA was an agent of SoFi, and the Telecommunication Defendants and Telemarketing Defendants were the agents of MOHELA and sub-agents of SoFi, and at all times herein were acting within the course and scope of such agency, service, employment and/or joint venture in promoting the Pathways Student Loan Program, and each Defendant has ratified, approved, and authorized the acts of each of the remaining defendants with full knowledge of said facts.

122.    Plaintiff is informed and believes, and on that basis alleges, that the Telecommunication Defendants and the Telemarketing Defendants at all times herein mentioned was an agent, servant, employee or joint venturer of each other, and was at all times acting within the course and scope of such agency, service, employment, and/or joint venture, and that the Telecommunication Defendants have ratified, approved, and authorized the acts of the Telemarketing Defendants with full knowledge of said facts.

## IX.    Aiding and Abetting/Conspiracy

123.    Defendants, and each of them, aided and abetted, encouraged, and rendered substantial assistance to the other Defendants in breaching their obligations to Plaintiffs, as alleged herein. In taking action, as alleged herein, to aid and abet and substantially assist the commissions of these wrongful acts and other wrongdoing complained of, each of the Defendants acted with an awareness of its/his/her primary wrongdoing and realized that its/his/her conduct would substantially assist the accomplishment of the wrongful

conduct, wrongful goals, and wrongdoing. Defendants and each of them also knowingly and willfully conspired to attempt to defraud Plaintiffs and did the acts and things herein alleged pursuant to, and in furtherance of, the conspiracy.

## CLASS ACTION ALLEGATIONS

124.   Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully stated herein.

125.   Plaintiffs bring this action individually and on behalf of all other persons similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

126.   All Plaintiffs propose the following National Class Definitions, subject to amendment as appropriate:

**National Class:** All persons in the United States who received one or more calls or direct voicemails identified in Paragraphs 33[14] and/or 34 of this Complaint who are, or were, a federal student loan borrowers at the time they received the first telephone call or voicemail message.

127.   Plaintiff Gregory Kilcrease also brings this action on behalf of himself and all residents of the State of Florida and individuals throughout the United States that have telephone numbers with area codes from the State of Florida and proposes the following Florida Sub-Class Definition:

**Florida Sub-Class:** All persons that reside in the State of Florida who received one or more calls or voicemails identified in Paragraphs 33[15] and/or 34 of this Complaint that are, or were, federal student loan borrowers at the time they received the first telephone call or voicemail message, and any person having a cellular or residential telephone number with an area code

---

[14] This class includes federal student loan borrowers who received a nearly identical call or direct voicemail from the same prerecorded artificial voice that identifies the entity calling as the "*Department* of Economic Impact" as well as the "*Division* of Economic Impact."

[15] This class includes federal student loan borrowers who received a nearly identical call or direct voicemail from the same prerecorded artificial voice that identifies the entity calling as the "*Department* of Economic Impact" as well as the "*Division* of Economic Impact."

assigned to telephones in the State of Florida that received one or more calls and/or voicemail messages identified in Paragraph 33 and/or 34 of this Complaint that are, or were, a federal student loan borrower at the time they received the first telephone call or voicemail message.

128.   Plaintiff Maria Lopez also brings this action on behalf of herself and all residents of the State of Illinois and proposes the following Illinois Sub-Class Definition:

**Illinois Sub-Class:** All persons that reside in the State of Illinois who received one ore more calls identified in Paragraphs 33 and/or 34 of this Complaint who are, or were, a federal student loan borrower at the time they answered the call and spoke, and all persons that reside in the State of Illinois who received a direct voicemail referenced in Paragraphs 33 and/or 34 of this Complaint and returned the voicemail message by calling the number referenced in the message, and spoke when answering the call or when connected to a call center who are, or were, a federal student loan borrower at the time they received the call.

129.   This action may properly be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

130.   All members of the classes have been subjected to and affected by the same conduct, namely the receipt of robocalls using prerecorded messages with artificial voices on their residential or cellular telephones that contain highly deceptive and misleading information about loan forgiveness.

131.   All Plaintiffs are members of the National Class.

132.   Plaintiff Kilcrease is also a member of the Florida Sub-Class.

133.   Plaintiff Lopez is also a member of the Illinois Sub-Class.

134.   Excluded from the National Class, Florida Sub-Class and Illinois Sub-Class are Defendants, and any entity in which Defendants have a controlling interest,

Defendants' agents and employees, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family, as well as Plaintiffs' and Defendants' attorneys and members of these attorneys' law firms and their immediate family members.

135.   Plaintiffs are informed and believe, and on that basis allege, that the National Class, Florida Sub-Class and the Illinois Sub-Class are comprised of thousands of federal student loan borrowers and are so numerous that joinder of their individual claims is impracticable. The precise number of members of the National Class, Florida Sub-Class and Illinois Sub-Class and the identities of the members of the National Class, Florida Sub-Class and Illinois Sub-Class are easily ascertainable from the business records of the Telecommunication Defendants.

136.   Questions of law and fact common to the National Class, Florida Sub-Class and Illinois Sub-Class exist and predominate over questions affecting only individual Class members; and resolving these issues for one class member will resolve them for others These common legal and factual questions include without limitation:

    a. Whether MOHELA, as the agent of SoFi, provided contact information for federal student loan borrowers to the Telecommunication Defendants;

    b. Whether SoFi, as the principal for its servicing agent MOHELA, obtained contact information from MOHELA for federal student loan borrowers to provide to the Telemarketing Defendants to advertise for the Pathways Student Loan Program;

    c. Whether the members of the National Class received a prerecorded call identified in Paragraph 33 and/or 34 of this Class Action Complaint that was delivered by the Telecommunication Defendants;

    d. Whether the members of the Florida Sub-Class received a prerecorded call identified in Paragraph 33 and/or 34 of this Complaint;

    e. Whether Plaintiffs and all Class members provided prior express written consent to receive the robocalls described throughout this Complaint;

f.  Whether the Telecommunication Defendants delivered the robocalls and direct voicemail messages described throughout this Complaint to federal student loan borrowers' telephones;

g.  Whether the Telecommunication Defendants provided return call services for the Telemarketing Defendants and caused inbound calls from federal student loan borrowers to be delivered to the Telemarketing Defendants and their call center(s) and agents;

h.  Whether the Telecommunication Defendants used Voice API technology create the deceptive and misleading prerecorded messages identified in Paragraphs 33 and 34 of this Class Action Complaint;

i.  Whether the Telecommunication Defendants "spoofed" the telephone number from where these robocalls were placed and provided an inaccurate originating telephone number on federal student loan borrowers' Caller IDs;

j.  Whether the telephone numbers appearing on Plaintiff Kilcrease and the Florida Sub-Class members' Caller IDs were capable of receiving calls from Plaintiff Kilcrease and the Florida Sub-Class members;

k.  Whether the content of the prerecorded messages delivered by the Telecommunication Defendants to federal student loan borrowers' telephones was false, deceptive or misleading or was designed to defraud, confuse, or financially or otherwise injure the federal student loan borrower receiving the call;

l.  Whether the Telecommunication Defendants collected, recorded and/or stored biometric information (i.e., voiceprints) of federal student loan borrowers receiving these robocalls when borrowers spoke when answering these robocalls;

m. Whether the Telecommunication Defendants stored, collected, and/or disseminated voiceprints collected from federal student loan borrowers in violation of BIPA.

n. Whether Defendants' conduct described throughout this Complaint violated the TCPA;

o. Whether Defendants' conduct described throughout this Complaint violated the FTSA;

p. Whether Defendants' conduct described throughout this Complaint violated the BIPA;

q. Whether Defendants willfully violated the TCPA;

r. Whether Defendants willfully violated the FTSA;

s. Whether Defendants intentionally or recklessly violated the BIPA;

t. Whether Defendants negligently violated the BIPA;

u. Whether Defendants MOHELA and SoFi were negligent in allowing contact information for federal student loan borrowers to be used by the other Defendants;

v. Whether Defendant MOHELA segregated federal student loan borrower data in its servicing system from private SoFi student loan borrower data in its servicing system;

w. Whether Defendants are liable for statutory damages;

x. Whether the Telemarketing Defendants' owners, directors, officers, and principals (John Does 1-10) are personally liable for the illegal conduct alleged herein; and

y. Whether Defendants should be enjoined from engaging in such conduct in the future.

137. Plaintiffs' claims are typical of the claims of the National Class, Florida Sub-Class and Illinois Sub-Class because the claims arise from receipt of the same telephone

calls or direct voicemails with prerecorded messages made with artificial voices and Plaintiff and each member of the National Class, Florida Sub-Class and Illinois Sub-Class spoke when answering the call or returning the direct voicemail message containing. Each member of the National Class, the Florida Sub-Class and the Illinois Sub-Class are federal student loan borrowers. Each member of the National Class is entitled to statutory damages under the TCPA. Each member of the Florida Sub-Class is entitled to statutory damages under the FTSA. Each member of the Illinois Sub-Class is entitled to statutory and actual damages under the BIPA.

138.   Plaintiffs are adequate representatives of the National Class, Florida Sub-Class and Illinois Sub-Class because: (a) their interest do not conflict with the interests of the individual members of the National Class, Florida Sub-Class and Illinois Sub-Class they seek to represent; (b) Plaintiffs have retained counsel who are competent and experienced in complex class action litigation, particularly consumer protection litigation; and (c) Plaintiffs intend to prosecute this action vigorously. The interests of the members of the National Class, Florida Sub-Class and Illinois Sub-Class will be fairly and adequately protected by Plaintiffs and their counsel.

139.   A class action is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs and the National Class, Florida Sub-Class and Illinois Sub-Class. Furthermore, because the economic damages suffered by the individual Class and Sub-Class members may be relatively modest, albeit significant, compared the expense and burden of individual litigation, it would be impracticable for members of the National Class, Florida Sub-Class and Illinois Sub-Class to seek redress individually for the wrongful conduct alleged herein. There will be no undue difficulty in the management of this litigation as a class action. Plaintiffs' and the National Class members', Florida Sub-Class members' and Illinois Sub-Class members' common claims can be economically adjudicated only in a class action proceeding, thus promoting judicial efficiency and avoiding multiple trials and inconsistent judgments.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**

**Statutory Violations of the Telephone Consumer Protection Act**
**42 U.S.C. § 227 *et seq.***
**[On Behalf of the National Class Against SoFi, MOHELA and the**
**Telecommunication Defendants]**

140.   Plaintiffs incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

141.   Defendants SoFi, MOHELA and the Telecommunication Defendants are, and at all times mentioned herein were each, a "person," as defined by 47 U.S.C. § 153(39).

142.   Upon information and belief, SoFi and MOHELA contracted with the Telecommunication Defendants to place and deliver telephone calls that delivered prerecorded messages with artificial prerecorded voices to Plaintiffs' cellular telephones.

143.   The telephone numbers that the Telecommunication Defendants, as agents of SoFi and MOHELA, called to contact Plaintiffs were assigned to a cellular telephone service, as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

144.   Plaintiffs did not provide their "prior express written consent" allowing Defendants to place or deliver telephone calls to Plaintiffs' cellular phones to deliver prerecorded messages with artificial voices, within the meaning of 47 U.S.C. § 227(b)(1)(A).

145.   The Telecommunication Defendants, acting on behalf of MOHELA and SoFi, did not make these telephone calls to Plaintiffs' cellular telephones "for emergency purposes" as described in 47 U.S.C. § 227(b)(1)(A).

146. Under the TCPA, the burden is on MOHELA, SoFi, and the Telecommunication Defendants to demonstrate that Plaintiffs and members of the National Class provided prior express written consent within the meaning of the TCPA.[16]

147. The foregoing acts and omissions by SoFi and MOHELA constitute numerous and multiple violations of the TCPA, including without limitation each of the above cited provisions of 47 U.S.C. § 227 *et seq.*

148. As a result of SoFi and MOHELA's violations of 47 U.S.C. § 227 *et seq.*, Plaintiffs and Class members are entitled to an award of $500 in statutory damages for each and every call that violates the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

149. Plaintiffs and Class members are also entitled to and do seek injunctive relief prohibiting SoFi, MOHELA and the Telecommunication Defendants from violating the TCPA in the future.

150. Plaintiffs and Class members are also entitled to an award of attorneys' fees and costs.

## SECOND CAUSE OF ACTION

### Knowing and/or Willful Violations of the Telephone Consumer Protection Act 42 U.S.C. § 227 *et seq.*
### [On Behalf of the National Class Against the Telecommunication Defendants]

151. Plaintiffs incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

152. The foregoing acts and omissions of the Telecommunication Defendants constitute multiple knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

153. As a result of the Telecommunication Defendants knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiffs and each member of the National Class

---

[16] *See FCC Declaratory Ruling*, 23 F.C.C.R. at 565 (¶ 10).

are entitled to treble damages of up to $1,500 for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

154.   Plaintiffs and Class members are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA by the Telecommunication Defendants in the future.

155.   Plaintiff and Class members are also entitled to an award of attorneys' fees.

### THIRD CAUSE OF ACTION

### Statutory Violation of the Florida Telephone Solicitation Act, Fla. Stat. § 501.509(8)(a)
### [On Behalf of the Florida Sub-Class Against SoFi, MOHELA and the Telecommunication Defendants]

156.   Plaintiff Kilcrease incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

157.   Plaintiff Kilcrease brings this claim on behalf of the Florida Sub-Class.

158.   It is a violation of the FTSA to "make or *knowingly allow a telephone sales call to be made* if such call involves an automated system for the selection or dialing of telephone numbers or *the playing or a recorded message when a connection is completed* to the number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

159.   Mr. Kilcrease is a "consumer" and a "called party" as those terms are defined in § 501.509(1)(a)-(b) of the FTSA because he is the regular user of the telephone number that received the aforementioned calls with prerecorded messages and is a prospective purchaser or recipient of consumer goods or services.

160.   SoFi, MOHELA and the Telecommunication Defendants are "telephone solicitors" as that term are defined in § 501.509(1)(i) because they do business in the state of Florida and cause telephonic sales calls to be made using recorded message devices to consumers in the state of Florida. § 501.509(1)(e).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

161.   The aforementioned robocalls identified in Paragraphs 33 and 34 of this Complaint are "telephonic sales calls" within the meaning of the FTSA because they were telephone calls and/or voicemail transmissions made for the purpose of soliciting an extension of credit for consumer goods or services, in this case the Pathways Student Loan Program, and/or to obtain information that will or may be used for the extension of credit for such purposes. § 501.509(1)(j)

162.   SoFi and MOHELA knowingly allowed the Telemarketing Defendants to make telephonic sales calls to Mr. Kilcrease and the Florida Sub-Class that played prerecorded messages with artificial voices without the prior express written consent of Mr. Kilcrease and members of the Florida Sub-Class. Upon information and belief, Defendant MOHELA (the agent of SoFi) is aware of these fraudulent telemarketing sales calls to the borrowers whose loans it services.

163.   As a result of MOHELA's, SoFi's and the Telecommunication Defendants' violation of § 501.059(8)(a) of the FTSA, Plaintiff Kilcrease and the Florida Sub-Class members are entitled to an award of $500 per call pursuant to § 501.059(10)(a)(2).

164.   Plaintiff Kilcrease and the Florida Sub-Class also request treble damages from the Court assessed against the Telecommunication Defendants because the Telecommunication Defendants knowingly and willfully violated the FTSA as described above.

165.   Plaintiff Kilcrease and the Florida Sub-Class members are also entitled to and seek injunctive relief prohibiting such conduct that violates the FTSA in the future pursuant to § 501.059(10)(a)(1).

166.   Plaintiff Kilcrease and the Florida Sub-Class members are also entitled to an award of attorneys' fees and costs pursuant to § 501.059(11).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## FOURTH CAUSE OF ACTION

### Violations of the Florida Telephone Solicitation Act, Fla. Stat. § 501.509(8)(b)
### [On Behalf of the Florida Sub-Class Against the Telecommunication Defendants]

167.   Plaintiff Kilcrease incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

168.   Plaintiff Kilcrease brings this claim on behalf of the Florida Sub-Class.

169.   The FTSA also makes it "unlawful for any person who makes a telephonic sales call or *causes a telephonic sales call to be made* to fail to transmit or cause not to be transmitted the originating telephone number and, when made available by the telephone solicitor's carrier, the name of the telephone solicitor to any caller identification service in use by a recipient of a telephonic sales call." § 501.059(8)(b).

170.   The FTSA also mandates that [i]f a telephone number is made available through a caller identification service as a result of a telephonic sales call, the solicitor must ensure that telephone number is capable of receiving telephone calls and must connect the original call recipient, upon calling such number, to the telephone solicitor or to the seller on behalf of which a telephone sales call was placed." § 501.059(8)(b).

171.   Mr. Kilcrease is a "consumer" and a "called party" as those terms are defined in § 501.509(1)(a)-(b) of the FTSA because he is the regular user of the telephone number that received these robocalls with prerecorded messages that were telephonic sales calls and is a prospective purchaser or recipient of consumer goods or services.

172.   Mr. Kilcrease and members of the Florida Sub-Class have "caller identification service" on their telephones that allow them to have the telephone number and, where available, the name of the called party transmitted contemporaneously.

173.   Defendants IP Horizon, Onvoy and Inteliquent are "telephone solicitors" as that term are defined in § 501.509(1)(i) because they do business in the state of Florida and cause telephonic sales calls to be made with recorded message devices to consumers

in the state of Florida through VoIP technology, which allows telephone calls to be placed over the internet using broadband technology. § 501.509(1)(e).

174.   The aforementioned calls were "telephonic sales calls" within the meaning of the FTSA because they were telephone calls and/or voicemail transmissions made for the purpose of soliciting a sale of goods and "services" or extensions of credit for consumer goods or services and/or to obtain information that will or may be used for the extension of credit for such purposes. § 501.509(1)(j).

175.   Defendants IP Horizon, Onvoy and Inteliquent caused telephonic sales calls to be made to Mr. Kilcrease and the Florida Sub-Class that played prerecorded messages with artificial voices without the prior express written consent of Mr. Kilcrease and members of the Florida Sub-Class.

176.   Defendants IP Horizon, Onvoy and Inteliquent, in causing these telephonic sales calls to be made from and within the State of Florida, violated the FTSA by causing the originating telephone number and the name of the telephone solicitor to not be transmitted contemporaneously to caller identification services used by Mr. Kilcrease and the Florida Sub-Class. § 501.509(8)(b).

177.   Defendant IP Horizon, Onvoy and Inteliquent, in causing these telephonic sales calls to be made from and within the State of Florida, also violated the FTSA by failing to ensure that the number made available through called parties' caller identification service is also capable of receiving telephone calls that connect the original call recipient, upon calling such number, to the telephone solicitor or to the seller on behalf of which a telephonic sales call was placed. Upon information and belief, if a consumer calls the number appearing on their Caller ID, the number does not ring, is not in service to receive calls and is usually a dead phone line.

178.   As a result of IP Horizon's, Onvoy's and Inteliquent's violation of § 501.059(8)(b) of the FTSA, Plaintiff Kilcrease and the Florida Sub-Class members are entitled to an award of $500 per call pursuant to § 501.059(10)(a)(2).

179.   Plaintiff Kilcrease and the Florida Sub-Class also request treble damages from the Court because the Telecommunication Defendants knowingly and willfully violated the FTSA as described above.

180.   Plaintiff Kilcrease and the Florida Sub-Class members are also entitled to and seek injunctive relief prohibiting such conduct that violates the FTSA in the future pursuant to § 501.059(10)(a)(1).

181.   Plaintiff Kilcrease and the Florida Sub-Class members are also entitled to an award of attorneys' fees and costs pursuant to § 501.059(11).

## FIFTH CAUSE OF ACTION

### Violation of the Florida Telephone Solicitation Act, Fla. Stat. § 501.509(8)(c)
### [On Behalf of the Florida Sub-Class Against Inteliquent]

182.   Plaintiff Kilcrease incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

183.   Plaintiff Kilcrease brings this claim against Defendant Inteliquent on behalf of the Florida Sub-Class.

184.   The FTSA also makes it "unlawful for any person who makes a telephonic sales call or causes a telephonic sales call to be made to *intentionally alter the voice of the calle*r in an attempt *to defraud, confuse, or financially or otherwise injure* the recipient of a telephonic sales call or in order *to obtain personal information* from the recipient of a telephonic sales call which may be used in a fraudulent and unlawful manner." Fla. Stat. § 501.059(8)(c).

185.   Mr. Kilcrease is a "consumer" and a "called party" as those terms are defined in § 501.509(1)(a)-(b) of the FTSA because he is the regular user of the telephone number that received the aforementioned calls with prerecorded messages and is a prospective purchaser or recipient of consumer goods or services.

186.   Inteliquent is a "telephone solicitor" as that term is defined in § 501.509(1)(i) because it does business in the state of Florida and causes telephonic sales calls to be made with recorded message devices to consumers in the state of Florida. § 501.509(1)(e).

187.   The aforementioned calls were "telephonic sales calls" within the meaning of the FTSA because they were telephone calls and/or voicemail transmissions made for the purpose of soliciting a sale of goods and "services" or extensions of credit for consumer goods or services and/or to obtain information that will or may be used for the extension of credit for such purposes. § 501.509(1)(j).

188.   Inteliquent made, or caused to be made, telephonic sales calls to Mr. Kilcrease and the Florida Sub-Class that played prerecorded messages with artificial voices without the prior express written consent of Mr. Kilcrease and members of the Florida Sub-Class.

189.   Upon information and belief, Inteliquent used Voice API technology to intentionally alter the voices of the other Telecommunication Defendants who use this technology to impersonate the following individuals in making the aforementioned telephonic sales calls received by Florida residents, or made from within the State of Florida: Mary Fuller, David Miller, David Fuller, Elizabeth Adler, and the artificial intelligence bot that identifies itself as the virtual assistant to Margaret Smith.

190.   Upon information and belief, Inteliquent altered the voice of the individuals making these telephonic sales calls in order to disguise or conceal the fact that it was the Telecommunication Defendants that were actually causing these telephone calls to be made, rather than Mary Fuller, David Miller, David Fuller, Elizabeth Adler or Margaret Smith.

191.   As a result of Inteliquent's violation of § 501.059(8)(c) of the FTSA, Plaintiff Kilcrease and the Florida Sub-Class members are entitled to an award of $500 per call pursuant to § 501.059(10)(a)(2).

192.    Plaintiff Kilcrease and the Florida Sub-Class also request treble damages from the Court because Inteliquent knowingly and willfully violated the FTSA as described above.

193.    Plaintiff Kilcrease and the Florida Sub-Class members are also entitled to and seek injunctive relief prohibiting such conduct that violates the FTSA in the future pursuant to § 501.059(10)(a)(1).

194.    Plaintiff Kilcrease and the Florida Sub-Class members are also entitled to an award of attorneys' fees and costs pursuant to § 501.059(11).

## SIXTH CAUSE OF ACTION

### Illinois Biometric Information Privacy Act, 740 ILCS 14/1 *et seq.*
### [On Behalf of the Illinois Sub-Class against Onvoy and Inteliquent]

195.    Plaintiff Lopez incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

196.    Ms. Lopez brings this claim under BIPA against Defendants Onvoy and Inteliquent which are headquartered in Chicago, Illinois according to their most recently filed FCC Form 499.

197.    BIPA makes it unlawful for any private entity to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first: "(1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information. . . ." 740 ILCS 14/15(b).

198.    Onvoy and Inteliquent are corporations, limited liability companies, associations and/or individuals and, therefore, each are a "private entity" as that term is defined under BIPA.

199.   Ms. Lopez and members of the Illinois Sub-Class are Illinois residents and federal student loan borrowers who had their "biometric identifiers" and "biometric information," specifically recordings of their voices, collected, captured, received, or otherwise obtained by the Inteliquent and Onvoy when answering these illegal robocalls made or caused to be made by Defendant Onvoy and Inteliquent. *See* 740 ILCS 14/10.

200.  Onvoy and Inteliquent systematically and automatically collected, used, and stored Ms. Lopez's and the Illinois Sub-Class members' biometric identifiers and/or biometric information without first obtaining the written release required by 740 ILCS 14/15(b)(3).

201.  In fact, Onvoy and Inteliquent failed to properly inform Ms. Lopez and the Illinois Sub-Class in writing that their biometric identifiers and/or biometric information was being "collected or stored" by these Defendants, nor did Inteliquent and Onvoy inform Ms. Lopez and the Illinois Sub-Class members in writing of the specific purpose and length of term for which their biometric identifiers and/or biometric information (their voices and voiceprints) was being "collected, stored and used," as required by 740 ILCS 14/15(b)(1)-(2).

202.  In addition, Defendants Inteliquent and Onvoy do not publicly provide a retention schedule or guidelines for permanently destroying the biometric identifiers and/or biometric information of Ms. Lopez or the Illinois Sub-Class members, as required by the BIPA. *See* 740 ILCS 14/15(a).

203.  By collecting, storing, and using Ms. Lopez's and the Illinois Sub-Class members' biometric identifiers and biometric information as described herein, Defendants Onvoy and Inteliquent violated the rights of Ms. Lopez and each Illinois Sub-Class member to keep private these biometric identifiers and biometric information, as set forth in BIPA.

204.  Individually and on behalf of the proposed Illinois Sub-Class, Ms. Lopez seeks: (1) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs

and the Illinois Sub-Class by requiring Inteliquent and Onvoy to comply with the BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein, and to reveal the identity of all Telemarketing Defendants whose identities Inteliquent and Onvoy concealed using their VoIP and Voice API products; (2) statutory damages for each intentional and reckless violation of the BIPA pursuant to 740 ILCS 14/20 (2), or alternatively, statutory damages pursuant to 740 ILCS 14/20(1) if the Court finds that Defendants' violations were merely negligent; and (3) reasonable attorneys' fees, costs, and other litigation expenses pursuant to 740 ILCS 14/20(3).

## SEVENTH CAUSE OF ACTION
### Negligence
### [On Behalf of the National Class against MOHELA and SoFi]

205.   Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully stated herein.

206.   MOHELA, as a servicer that contracts with the United States Department of Education to service federal student loans and as the servicer that will soon be responsible for administering the PSLF and TEPSLF, owed a duty to the federal student loan borrowers' whose loans MOHELA services to use reasonable care in the handling and safeguarding of their sensitive confidential and financial information.

207.   MOHELA, through the acts described herein, breached its duty of care to Plaintiffs and the National Class by (i) failing to properly implement and maintain adequate information security measures to protect Plaintiffs' and National Class members' sensitive financial data, which was provided to it by the federal government and/or its contractors, from being accessed, disseminated and misused by the Telemarketing Defendants and Telecommunication Defendants; and (ii) failed to adequately store Plaintiffs' an Class members sensitive federal student loan account data in a safe and secure manner, specifically by segregating this data in its servicing system from SoFi private student loan borrowers' sensitive student loan account data.

208.   As a direct and proximate result of MOHELA's negligence, Plaintiff and Class members have suffered damages including becoming targets of fraudsters attempting to steal their personal and biometric information to be used for fraudulent purposes such as hacking into accounts that require consumers to verify their identity using voiceprint technology.

209.   SoFi, as the principal of its servicing agent MOHELA, is vicariously liable for MOHELA's negligence because it exercises a large degree of control over how MOHELA services SoFi's private student loan portfolio and MOHEA holds itself out as the agent for SoFi on these Defendants' websites.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court grant Plaintiffs and members of the National Class, Florida Sub-Class and Illinois Sub-Class the following relief against all Defendants:

A.   Injunctive relief prohibiting such future violations of the TCPA by SoFi, MOHELA, Onvoy, Inteliquent and IP Horizon;

B.   Injunctive relief prohibiting such future violations of the FTSA by SoFi, MOHELA, IP Horizon, Onvoy, Inteliquent and the Telecommunication Defendants;

C.   Injunctive relief prohibiting future violations of BIPA by Onvoy, Inteliquent and IP Horizon.

D.   As a result of Onvoy's, Inteliquent's and IP Horizon's willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiffs seek for themselves and for each National Class member treble damages, as provided by statute, of up to $1,500 for each and every violation of the TCPA.

E.   As a result of MOHELA's, SoFi's, Onvoy's, Inteliquent's and IP Horizon's statutory violations of 47 U.S.C. § 227(b)(1), Plaintiffs seek for themselves and each member of the National Class $500 in statutory damages for each and every violation of the TCPA;

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

F.     As a result of the Onvoy's, Inteliquent's and IP Horizon's willful and/or knowing violations of Fla. Stat. § 501.509(8)(a), Plaintiff Kilcrease seeks for himself and for each Florida Sub-Class member treble damages, as provided by statute, of up to $1,500 for each and every violation of the FTSA.

G.     As a result of MOHELA's, SoFi's, Onvoy's Inteliquent's and IP Horizon's statutory violations of Fla. Stat. § 501.509(8)(a), Plaintiff Kilcrease seeks for himself and each member of the Florida Sub-Class $500 in statutory damages for each and every violation of the FTSA;

H.     As a result of IP Horizon's, Onvoy's and Inteliquest's willful and knowing violations of Fla. Stat. § 501.509(8)(b), Plaintiff Kilcrease seeks for himself and each member of the Florida Sub-Class $1,500 in statutory damages for each and every violation of the FTSA;

I.     As a result of IP Horizon's, Onvoy's and Inteliquest's statutory violations of Fla. Stat. § 501.509(8)(b), Plaintiff Kilcrease seeks for himself and each member of the Florida Sub-Class $500 in statutory damages for each and every violation of the FTSA;

J.     As a result of Inteliquest's willful and knowing violations of Fla. Stat. § 501.509(8)(c), Plaintiff Kilcrease seeks for himself and each member of the Florida Sub-Class $1,500 in statutory damages for each and every violation of the FTSA;

K.     As a result of Inteliquest's statutory violations of Fla. Stat. § 501.509(8)(c), Plaintiff Kilcrease seeks for himself and each member of the Florida Sub-Class $500 in statutory damages for each and every violation of the FTSA;

L.     As a result of Onvoy's and Inteliquest's violation of BIPA, Plaintiff Lopez seek for herself and each member of the Illinois Sub-Class statutory damages for each and every reckless and/or intentional violation of BIPA, or, alternatively, statutory damages for each and every negligent violation of BIPA;

M.    As a result of MOHELA and SoFi's negligence, all Plaintiffs seek actual damages for themselves and each member of the National Class;

N.    An award of attorneys' fees and costs to counsel for Plaintiffs and the National Class, Florida Sub-Class and the Illinois Sub-Class.

O.    An order certifying this action to be a proper class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, finding that Plaintiffs are proper representatives of the National Class, Florida Sub-Class and Illinois Sub-Class, and appointing Plaintiff's listed counsel as Class Counsel;

P.    Awarding Plaintiffs and members of the National Class, Florida Sub-Class and Illinois Sub-Class pre- and post-judgment interest, to the extent allowable by law; and

Q.    Awarding any other relief that this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands trial by jury.

Dated: March 14, 2022          _/s/ Alex Straus_

Alex R. Straus (SBN 321366)
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
280 South Beverly Drive
Beverley Hills, CA 90212
Telephone:   (917) 471-1894
Facsimile:    (310) 496-3176
Email:              astraus@milberg.com

Adam Harris Cohen*
Blake Hunter Yagman*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
405 E. 50TH Street
New York, NY 10022
Telephone:   (212) 594-5300
Email:          acohen@milberg.com
                    byagman@milberg.com

*Attorneys for Plaintiff and members of the Class*

 *Pro Hac Vice Forthcoming